NOTICE

Decision filed 10/04/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220439-U

NO. 5-22-0439

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 18-CF-478 |
| | ) | |
| XAVIER McCRAY, | ) | Honorable |
| | ) | Michael A. Fiello, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the issues raised in defendant's postconviction petition were either waived by his guilty plea or factually unsupported, the circuit court properly dismissed it. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Xavier McCray, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the circuit court erred. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion supporting brief, we

1

agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                 BACKGROUND

¶ 4     In 2018, defendant and others were charged with conspiracy to possess more than 5000 grams of cannabis with the intent to deliver, aggravated battery with a firearm, and aggravated discharge of a firearm. On July 16, 2021, defendant agreed to plead guilty to aggravated discharge of a firearm. In exchange for the plea, the State would recommend the minimum 10-year sentence of which defendant would have to serve 85%. The State would dismiss the remaining charges.

¶ 5     The aggravated-discharge count of the indictment alleged that defendant was accountable for the conduct of Alex Bryan Karcher, who "knowingly discharged from a firearm a .223 caliber bullet which did not hit a peace officer but was discharged in the direction of a vehicle each knew to be occupied by a peace officer, Trey Harris."

¶ 6     Pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), the circuit court informed defendant of the elements of the charge, the possible penalties, and the rights he would be giving up by pleading guilty. After defendant assured the court that his plea was voluntary, that he had not been threatened or promised him anything, and that he had no questions about the process, the court accepted the plea and imposed the agreed sentence.

¶ 7     As a factual basis, the prosecutor asserted that the State could produce witnesses who would testify that the defendant

> "was present with Xavier Everett Lewis and Alex Karcher in a vehicle, and that that vehicle
> was being pursued by police officers in the course of which pursuit the defendant along
> with the other two individuals discharged firearms in the direction of the vehicle which
> they knew to contain a police officer since it was a marked vehicle and they could see a

2

police officer in it. We would further introduce evidence from witnesses that the defendant later bragged about shooting up a police car."

¶ 8 Defendant did not move to withdraw the plea. Instead, on May 9, 2022, he filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On May 27, 2022, the circuit court summarily dismissed it. We granted defendant leave to file a late notice of appeal.

¶ 9                                         ANALYSIS

¶ 10 OSAD concludes that no good-faith argument exists that the circuit court erred in dismissing defendant's petition. OSAD notes that a number of overarching concerns doom most of defendant's arguments. Counsel notes, for example, that most if not all of defendant's claims assert rights that he waived by pleading guilty. Further, most of his claims lack specific factual allegations. Counsel attempts to discern defendant's individual claims and concludes that, given the legal constraints noted above, they lack merit. We agree.

¶ 11 We begin with some general observations. The Act (*id.*) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008).

¶ 12 The scope of a postconviction proceeding is limited to constitutional claims that have not been, nor could have been, raised previously. Any issues that could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues that have previously been decided by a reviewing court are barred by *res judicata*. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). In addition, a defendant is not entitled to an evidentiary hearing unless the petition's allegations, supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation. *Id.* In making this decision, the circuit court must take as true all well-

3

pleaded facts in the petition and accompanying affidavits, but nonfactual and nonspecific assertions amounting merely to conclusions are insufficient. *Id.*

¶ 13 Although a defendant need only set forth the "gist" of a constitutional claim at this stage, and need not set forth the claim in its entirety (*People v. Edwards*, 197 Ill. 2d 239, 243 (2001)), the Act requires that a petitioner clearly set forth the respects in which his constitutional rights were violated, and to either attach affidavits, records, or other evidence to support those allegations or explain their absence. 725 ILCS 5/122-2 (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). We review the summary dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388 (1998).

¶ 14 Moreover, defendant entered a fully negotiated guilty plea and did not move to withdraw it. A voluntary guilty plea waives all nonjurisdictional defenses and defects. *People v. Burton*, 184 Ill. 2d 1, 27 (1998). Any issue not raised in a motion to withdraw the plea is waived. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Defendant's petition does not cogently explain why its claims—which involve conduct occurring prior to the plea—could not have been raised in a motion to withdraw the plea.

¶ 15 Many of defendant's claims are difficult to discern. Most appear to flow from the premise that he was subjected to an enhanced sentence based on the victim suffering bodily harm, of which the trial court did not inform him, and which his attorney did nothing to prevent. He contends, for example, that counsel failed "to investigate the sentencing statutes" and failed to investigate the victim's injuries. Defendant is mistaken, but to understand why we must examine the relevant statutes in some detail.

¶ 16 The indictment charged defendant with aggravated discharge of a firearm in violation of section 24-1.2(a)(4) of the Criminal Code of 2012, which provides:

4

"(a) A person commits aggravated discharge of a firearm when he or she knowingly or intentionally:

* * *

(4) Discharges a firearm in the direction of a vehicle he or she knows to be occupied by a peace officer, a person summoned or directed by a peace officer, a correctional institution employee or a fireman while the officer, employee or fireman is engaged in the execution of any of his or her official duties, or to prevent the officer, employee or fireman from performing his or her official duties, or in retaliation for the officer, employee or fireman performing his or her official duties[.]"  720 ILCS 5/24-1.2(a)(4) (West 2020).

¶ 17     The statute thus prohibits discharging a weapon in the direction of a vehicle containing a peace officer performing his or her official duties regardless of whether the officer is injured.  The statute further provides that a violation of subsection (a)(4) is a "Class X felony for which the sentence shall be a term of imprisonment of no less than 10 years and not more than 45 years." *Id.* § 24-1.2(b).

¶ 18     Section 3-6-3 of the Unified Code of Corrections dictates how a sentence must be served. As relevant here, when defendant was sentenced, it provided:

"(a) ***

* * *

(2) Except as provided in paragraph (4.7) of this subsection (a), the rules and regulations on sentence credit shall provide, with respect to offenses listed in clause (i), (ii), or (iii) of this paragraph (2) committed on or after June 19, 1998 or with respect to the

5

offense listed in clause (iv) of this paragraph (2) committed on or after June 23, 2005 (the effective date of Public Act 94-71) *** the following:

* * *

(iii) that a prisoner serving a sentence for home invasion, armed robbery, aggravated vehicular hijacking, *aggravated discharge of a firearm*, or armed violence with a category I weapon or category II weapon, when the court has made and entered a finding, pursuant to subsection (c-1) of Section 5-4-1 of this Code, that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim, shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment;

(iv) that a prisoner serving a sentence for *aggravated discharge of a firearm*, whether or not the conduct leading to conviction for the offense resulted in great bodily harm to the victim, shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment[.]" (Emphases added.) 730 ILCS 5/3-6-3(a)(2)(iii), (iv) (West 2020).

¶ 19    Defendant apparently seeks to invoke subsection (iii), which provides that one convicted of aggravated discharge of a firearm must serve 85% of his or her sentence only when the court specifically finds that the victim suffered great bodily harm. However, this subsection applies only to offenses committed before June 23, 2005. For offenses committed after that date, subsection (iv) applies, providing that anyone convicted of aggravated discharge of a firearm, regardless of whether the victim suffered great bodily harm, must serve 85% of the sentence. *People v. Sumrall*, 2023 IL App (5th) 220548-U, ¶¶ 20-21 (citing *People v. Williams*, 2015 IL App (1st) 130097, ¶ 63).

6

¶ 20    To summarize, the applicable statute required defendant to serve 85% of his sentence regardless of whether the victim was injured.  The circuit court correctly told him this, the State acknowledged from the beginning that the victim was not hit, and consequently defense counsel's failure to investigate the victim's injuries caused defendant no prejudice.

¶ 21    Defendant alleged several other instances of counsel's ineffectiveness, but these claims are equally unavailing.  " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).

¶ 22    Defendant alleged that plea counsel's failure to investigate the facts of the case resulted in counsel's failure to explain "the evidence, the charges, range of penalties, [and] the State's burden to produce these to the defendant."  He suggested that counsel's failure resulted in an unknowing plea.  However, the record clearly reflects that the circuit court properly admonished defendant about the charges, the range of penalties, and the State's burden of proof.

¶ 23    Defendant made several additional allegations, including that counsel was ineffective for failing to sever his case from those of his codefendants, hire an expert witness, quash his arrest and indictment, and request discovery.  As OSAD notes, defendant's guilty plea waived all of these potential issues.  Moreover, the record clearly reflects that counsel requested and received discovery.

¶ 24    The petition contains several additional claims, which we discuss in turn.  Defendant claimed that he was denied due process because a defense witness was not allowed to testify before the grand jury.  However, it is well settled that a defendant has no right to call witnesses at a grand

7

jury hearing. See *People v. Creque*, 72 Ill. 2d 515, 527 (1978) (neither defendant nor his counsel has right to participate in grand jury proceedings).

¶ 25    Defendant claimed that his sentence was more severe than those given to his codefendants. While defendants similarly situated should not receive grossly disparate sentences, equal sentences are not required for all participants in the same crime. *People v. Spriggle*, 358 Ill. App. 3d 447, 455 (2005). A defendant who contends that his sentence is unfairly disparate to that of a codefendant has the burden to produce a record sufficient to support the claim. *People v. Anderson*, 2021 IL App (2d) 191001, ¶ 28. Here, defendant does not provide any information about the codefendants or their sentences, so there is no valid basis for comparison. In any event, he specifically agreed to the 10-year sentence, which was the minimum available (see 720 ILCS 5/24-1.2(b) (West 2020)), thus waiving any such claim.

¶ 26    He further argued that the prosecutor committed misconduct by not disclosing his codefendants' plea agreements. We are aware of no requirement that a prosecutor do so, at least in the absence of a specific request, but, again, defendant's guilty plea waived the issue.

¶ 27    The petition also claimed that defendant's speedy trial rights were violated. As OSAD observes, this claim, too, was waived by defendant's guilty plea. Moreover, the claim lacks factual support. Defendant makes no effort to catalog the various delays or analyze whether they were attributable to the defense. See *People v. Mayfield*, 2023 IL 128092, ¶ 20 (speedy trial period is tolled during any time when the defendant causes, contributes to, or otherwise agrees to a delay). Moreover, much of the delay occurred during the COVID pandemic during which the speedy-trial period was tolled by the supreme court. *Id.*

¶ 28    Finally, defendant makes several claims that could generally be described as claiming actual innocence. He seemingly argued that he could not be guilty because he did not actually fire

8

a shot at anyone. However, a defendant may be guilty by accountability where he or she shared the principal's criminal intent or there was a common criminal design. 720 ILCS 5/5-2(c) (West 2014); *People v. Fernandez*, 2014 IL 115527, ¶ 21; *People v. Jackson*, 2020 IL App (4th) 170036, ¶ 38. Here, the indictment clearly alleged an accountability theory. While the State's factual basis allowed for the possibility that defendant personally fired one or more shots, it was also consistent with an accountability theory.

¶ 29 In addition to arguing that he did not fire any shots, defendant makes several other claims about the "sufficiency" of the evidence. He argues that only one codefendant placed him at the scene and claims at another point that "GPS" evidence would prove that he was never at the scene at all. The short answer to this is that defendant could have chosen to have a trial at which he could have forced the State to prove his guilt and could have presented contrary evidence. But he chose to plead guilty instead. "[B]y pleading guilty, a defendant *waives exactly those rights*." (Emphasis in original.) *People v. Jackson*, 199 Ill. 2d 286, 296 (2002).

¶ 30 Finally, OSAD concludes that no procedural error occurred. A circuit court may summarily dismiss a petition within 90 days. 725 ILCS 5/122-2.1(a) (West 2020). Here, defendant filed his petition on May 9, 2022. The court dismissed it on May 27, 2022, well within the 90-day period.

¶ 31 CONCLUSION

¶ 32 As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 33 Motion granted; judgment affirmed.